IN RE ERNESTO MIERES CALIMANO, PROSECUTING ATTORNEY, DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION; PEDRO PAGÁN SOTO, Appellant; BRUNILDA SEPÚLVEDA, Appellee.

No. 11144.   Argued May 3, 1954.—Decided June 10, 1954.

Guillermo Bauzá for appellant. Faría, Fornaris & Ruiz for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Brunilda Sepúlveda Pérez lost five-fiftieth parts of ticket No. 32,119 of the Puerto Rico Lottery for the special drawing to be held July 1, 1951. The five-fiftieth parts were found on "H" Street No. 3, Caparra Heights, which is Brunilda's residence, by a newspaper boy Pedro Pagán Soto, who kept them in his possession. The drawing was held on the above-mentioned date, and the first prize drawn was No. 32,119. Two days later the Office of the Lottery Paymaster, in Brunilda's presence, paid to Pedro Pagán Soto, bearer of the five fiftieths lost, the corresponding prize of $15,000. Brunilda complained to the prosecuting attorney of San Juan, who investigated the matter. In the course of the investigation Pagán Soto's father delivered to the prosecuting attorney the sum of $15,000 which his son had collected from the Lottery Bureau.

The prosecuting attorney concluded that Pedro Pagán Soto had committed no crime. In view of the fact that both Pagán and Brunilda claimed that each was the owner of the $15,000 prize, the prosecuting attorney deposited that sum in the Office of the Clerk of the District Court, now Superior

Court, in order for the court to decide the controversy between the parties. After the deposit was made, Brunilda Sepúlveda Pérez appeared by brief claiming to be the sole legitimate owner of the amount thus deposited and disclaiming Pagán Soto's right to the money. She further moved the court to so decree, directing the clerk to deliver to her the full amount. Thereupon Pedro Pagán Soto appeared by brief in opposition to Brunilda's claim. In that opposition he alleged briefly that he held the legal possession of the amount on deposit; that he consented to the deposit of that sum by the prosecuting attorney with the clerk of the court in order "to give an opportunity to any person who might claim a right thereto"; that since the opposing party held the possession and title to the sum paid to him by the Lottery Bureau, the conflict should not be settled by a special proceeding but that Brunilda should assert her rights in an ordinary proceeding; that the court had not acquired jurisdiction over the opposing party. Lastly, he prayed that Brunilda's petition be dismissed outright and, in the event that the court elected to prosecute the case in a contested proceeding it should issue an order directing that the sum on deposit be delivered in the meantime to him.

In view of above petitions, the lower court ordered Brunilda Sepúlveda and Pedro Pagán Soto to litigate between themselves their opposing claims to the $15,000 deposited by the prosecuting attorney, and to that effect set a date for a plenary hearing at which both parties would introduce their evidence.[1] After a hearing was held and the parties offered

---

[1] The dispositive portion of the court's order reads as follows:

"It is therefore ordered, that claimants Brunilda Sepúlveda Pérez and Pedro Pagán Soto litigate between themselves their opposing claims to the fifteen thousand dollars ($15,000) deposited in this case by assistant Prosecuting Attorney Ernesto Mieres Calimano, the hearing of which is set for November 2, 1951, at 9 a. m., in order that both claimants may appear before this court for a plenary hearing at which they may offer evidence in support of their respective claims.

"Upon calling the case for hearing on the aforesaid day and hour, the court will hear each claimant's contention and receive the pertinent evidence in support of his or her claim, and will finally adjudge the possession of the amount deposited in pursuance of law."

documentary and oral evidence, the court rendered judgment sustaining Brunilda Sepúlveda Pérez' claim, and consequently ordering the delivery to her of the whole sum of $15,000 held on deposit in the clerk's office. Pagán Soto appealed. He charges that the lower court erred (1) "in conceding a right to Brunilda Sepúlveda although there is no law to protect her claim"; (2) "in not ruling that if the delivery of the sum on deposit could be properly requested, Brunilda Sepúlveda has no legal status to do so"; (3) in not holding that, should Brunilda have any right at all, such right does not exceed the value of the five fiftieths at the time found by appellant; (4) in not ruling that Brunilda Sepúlveda lost through her own negligence the possession of the lottery ticket; and (5) "in authorizing the interpleader proceeding in the instant case."

We shall discuss jointly the first, third, and fourth errors, which are closely related and constitute the core of this proceeding.

Appellant argues that the instant case is governed by the special law creating the Official Lottery known as "Puerto Rico Lottery," [2] and not by the provisions of Book Three of the Civil Code, particularly § § 555 et seq. (1930 ed.), which deal with the finding of personal property. He further argues that the appellee lost possession of the winning ticket, if she ever held such possession, through negligence.

He is not right. The Official Lottery Act provides in § 12 that "No prize shall be paid without the previous presentation of the ticket winning it and the verification of its legitimacy." The Lottery Regulations contain a similar provision and further provide that lottery tickets "shall be considered as bearer securities; therefore, no person other than the one in possession thereof who presents the same for collection shall be deemed to be the owner of a winning ticket." Rule II-A, par. 4. "The Bureau of the Lottery"

---

[2] Act No. 465 of May 15, 1947 (Sess. Laws of Puerto Rico for that year, p. 1022).

—says Rule VII, par. 9— "the internal-revenue offices of the municipalities of the Island, and the agents shall not consider as owner of a ticket a person other than the one holding the possession thereof who presents the same for collection." Furthermore, on the back of the lottery tickets the following is printed: "Since the tickets are payable to the Bearer, the prizes will be paid to the person presenting same for collection. The prizes expire at the end of six (6) months." Relying on these provisions of the Act and its Regulations, appellant contends that since he held possession of the winning ticket, he presented it for collection, was paid, his title as owner of the prize was definitively established and cannot be contested by any person.

Appellant is not correct. The Act creating the Lottery regulates the juridical relations between ticket purchasers and the Government. For the purposes of prize payment, the holder of the ticket presenting it for collection shall be deemed to be the only owner. This does not imply, however, that the payment of the prize to the holder or bearer of a winning ticket is a definite, absolute and unassailable adjudication of the ownership right to such prize, to the prejudice of a third party. It is so for the Bureau of the Lottery. However, a third person claiming to be the legitimate owner of the prize, or to have some participation in it, is not precluded from making a claim in court. The Lottery Act did not purport to repeal, nor has it actually repealed, expressly or impliedly, the provisions of the Civil Code dealing with property rights. We must therefore resort to the provisions of that Code in order to settle the conflict involved in this proceeding.

■ It is an uncontroverted fact that appellant acquired the physical ownership or possession of the five fiftieths of ticket No. 32,119 by finding them. Nor is there any conflict as to the fact that those five fiftieths were lost by appellee, who held possession thereof. Contrary to appellant's contention, §§ 555 and 556 of the Civil Code (1930 ed.) are

therefore applicable to those facts. [3]   According to those Sections, a person finding any personal property [4] which is not treasure, must return it to its possessor.   Should the latter be unknown, he must deliver it immediately to the mayor of the town where the find was made.   The mayor shall publish it in the usual manner for two consecutive weeks and, after two years have elapsed from the date of the second advertisement without the owner having appeared, the thing found or its value shall be awarded to the person who found it.   Appellant herein did not return, as has been seen, the tickets to the former possessor, nor deliver them to the mayor, but, on the contrary, he appropriated them to himself.   Their possession was not therefore in good faith,

---

[3] These Sections provide:

"Section 555.—A person finding any personal property, which is not treasure, must return it to its former possessor.   Should the latter be unknown, he must deliver it immediately to the mayor of the town where the find was made.

"The mayor shall publish it in the usual manner two consecutive weeks.

"Should it not be possible to keep the personal property found without injury or without incurring expenses greatly reducing its value, it shall be sold at public auction, after eight days have elapsed from the second advertisement, without the owner having appeared, and the proceeds shall be deposited.

"After two years have elapsed from the date of the second advertisement, without the owner having appeared, the thing found or its value shall be awarded to the person who found it.

"The latter, or the owner, in a proper case, shall be obliged to pay the costs.

"Section 556.—Should the owner appear, in due time, he shall be obliged to pay, as a reward to the finder of the thing, a tenth part of the sum or of the value of the article found.   If the value of the find exceeds five hundred dollars, the reward shall be reduced to a twentieth with regard to the excess."

[4] We entertain no doubt that lottery tickets are personal property. Commenting on § 615 of the Spanish Civil Code, which is equivalent to § 555 of our Code, in vol. 5, 6th ed., p. 77, Manresa states as follows: "The terms employed in § 615, first paragraph, cover by their generality, all classes of persons and all kinds of personal property.   We believe that the term *thing* should be deemed synonymous with property.   Personal property is all property not comprised within § 334 of the Code [equivalent to §263 of our Code] and, hence, movables."   Section 263 of our Code defines immovables by specific enumeration without including the property herein involved.

nor does it amount to a title. Appellant could not acquire ownership of those tickets until the legal period for extraordinary prescription had expired. "The finder of a thing must return it to its owner, if he is known, or deliver it to the mayor, if he is not known; but, suppose he does not?

"We already stated in the commentaries on § 464 that, in such case, prescription is necessary in order for the finder or a third party to acquire, and the former must hold possession, as a general rule, for an extraordinary period of six years; *since he does not hold in good faith*. Nor for the same reason is possession equivalent to title, except for the provision of § 1956, as we shall presently verify upon examination of the subject matter of prescription. In such case, *there is no juridical occupation: there is only a material occupation*, as stated in § 438, which can result only from the possession acquired, and never, without the legal lapse, in the acquisition of title." (Italics ours.) 5 Manresa, *Código Civil*, p. 75.[5] See also Scaevola, *Código Civil*, vol. 8, p. 594 (5th ed.).

■■ Appellant contends that, since we are concerned with abandoned movable property, he acquired the tickets by occupancy under § 550 of the Civil Code. "Things are acquired by occupancy" —says that Section— "which can be appropriated by reason of their nature, which have no owners, such as animals which are the object of hunting and fishing, hidden treasure and abandoned property." His error consists in regarding personal property as abandoned which actually is not. Let us turn to Manresa's commentaries on this matter:

"According to basis 14, § § 615 and 616 state the principles applicable in general to *abandoned* movable property, but only to those properties which are abandoned without it being expressly known that the owner wishes to part with them. They are simply things which do not have an actual and material owner. The abandonment in the sense of disowning a thing, of renouncing title thereto, of severing all juridical relations

---

[5] Sixth edition.

therewith, must be express, clear and evident. Otherwise, the law presumes that the abandoned thing has been lost, that it has an owner; briefly, that the abandonment has not been voluntary or intentional.

"Thus, the person who finds and occupies a thing does not acquire immediate title. All notices, all formalities, all periods fixed, are aimed exclusively at finding or locating the owner; everything is done for his benefit. Thus, from the moment the owner appears within the two years, that which has not ceased to be his, must be restored to him. However, if the two years elapse and the owner makes no claim, the law assumes that either there is not a former owner or that he has relinquished his right, and then declares severed the previous dominion relation and awards the thing to the finder.

"The effect of the occupancy is therefore conditional; the award to the finder is indicative of the acquisition of title by the latter, and that is the time when the title derived from the occupation comes into actual existence." (5 Manresa, *Código Civil*, pp. 72, 73.)

And at p. 74 of the same volume it is stated as follows:

"We have said that the law starts from the premise that abandoned movable properties have a known or an unknown owner, who either did not wish to abandon them or abandoned them against his will. But, suppose the will to relinquish title does expressly appear? The Code does not treat this question in § 615, and we must necessarily admit that this isolated act is neither frequent nor even natural. The proper thing would be that the desire to give away the things for the benefit of other persons, expressly or tacitly determined, would be known at the same time."

In the instant case the presumption that the owner of the tickets did not wish to abandon them, or did so against her will, was fully supported by the evidence; in other words, we are dealing with a loss.

Appellant's contention that any right accruing to appellee does not exceed the value of the five fiftieths at the time of the finding is without merit. It was the appellant who, by his failure to abide by the statutory provisions and deliver the tickets to some authorized person, relinquished the

reward to which he is entitled under § 556 of the Civil Code and which the owner of the lost property was bound to pay him. In an endeavor to determine the amount of the reward to which the finder of a lottery ticket is entitled, Scaevola lays down the following rule: "The rights of the finder of a lottery ticket shall be subordinated to the outcome of the drawing," adding:

"This is the presumption provided the finder abides by the legal provisions and delivers the ticket to the person in authority, designated by the Code, or restores it to its former owner, if the latter is known to him; for if he should withhold the ticket and seek collection as if it were his, he would relinquish all right to the proportional share of the one-tenth or one-twentieth part of the amount of the prize, depending on whether the latter is greater or less than the sum of 2,000 pesetas.

"Section 11 of the General Lottery Instructions approved by the Royal Decree of February 25, 1893, provides that 'lottery tickets are bearer documents, wherefore no person other than the bearer shall be deemed to be the owner, without prejudice to a third party, the determination of which is incumbent on the ordinary courts.' Does this Section of the Regulations imply that the mere fact of the possession of the ticket entitles the possessor to the ownership thereof? Not at all, and this is evidenced by the saving clause made in favor of the owner's rights, provided it is so adjudged by the ordinary courts.

"Apart from the fact that if we are to construe that Section, without falling into absurdity, by adhering strictly to its deficient wording, we would be compelled to sanction, in the light of strictest law, the action of one who finds a winning ticket and cashes it and appropriates to himself the amount of the prize. The fact that a lottery ticket is a bearer document is not sufficient to blot out the irregularities in acquiring something in a vicious way. It is therefore likely that the practical example here presented may occur, in which case it will be necessary to apply § 616 in the manner and subject to the rule which we have just enunciated." (11 Scaevola, 5th ed., pp. 438 and 439.)

These three errors were not committed. Neither were the second and fifth. The uncontroverted evidence believed by the lower court established that a fellow worker delivered

to Brunilda Sepúlveda Pérez thirty fiftieths of ticket No. 32,119 for distribution in fiftieth parts among several fellow workers. Ten of those fifty parts were for Brunilda and five for her brother Daniel Gonzalo Sepúlveda. Brunilda distributed fifteen of those parts and kept ten for herself and five for Gonzalo. The latter were detached from the other ten. It was then that Brunilda lost the five parts found by appellant. The evidence further established that Brunilda collected the prize corresponding to ten fiftieth parts, and thereafter delivered to her brother Daniel Gonzalo the sum of $15,000 corresponding to his five fiftieths. Assuming that the fiftieths lost were Daniel Gonzalo's and not Brunilda's, there is no doubt that the latter was subrogated to the rights of the former by paying him the sum of $15,000. This being so, we cannot agree with appellant that Brunilda lacked standing to make the present claim. Moreover, we fail to see in what way appellant's position can be improved by the fact that the fiftieths lost were Gonzalo's and not Brunilda's.

We are compelled also to reject appellant's contention that the lower court was without jurisdiction over his person. His voluntary appearance, as stated early in this opinion, was sufficient to vest jurisdiction in the trial court. We will neither pass on the question of whether or not the interpleader proceeding ordered by that court was correct. Whether an action of revendication, interpleader, or a personal action, the fact is that the parties had a day in court, that a plenary trial was held, and that all concerned were afforded an ample opportunity to present evidence and assert their respective rights. Appellant has not invited our attention to any injury sustained by reason of the proceeding followed in the instant case in the trial court.

Since none of the errors assigned by appellant were committed, the judgment appealed from will be affirmed.